UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TARA ANNE YOUNG,

                         Plaintiff,

      -vs-                          **No. 1:15-CV-00578 (MAT)**
                                          **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                         Defendant.

---

## I. Introduction

Represented by counsel, plaintiff Tara Anne Young ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is granted to the extent that this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order, and the Commissioner's motion is denied.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. Procedural History

Plaintiff protectively filed an application for DIB on November 13, 2010, alleging disability as of May 21, 2010 due to neck injury, back strain, anxiety, and depression. Administrative Transcript ("T.") 320-23, 343, 347. Plaintiff's application was denied initially and on reconsideration. T. 205-208, 210-14.[2] At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Joseph D. Schloss on August 15, 2012, at which Plaintiff appeared *pro se*. T. 39-65. The ALJ held a supplemental hearing on January 8, 2013, at which Plaintiff again appeared *pro se*. T. 66-84. On July 15, 2013, the ALJ issued a decision in which he found that Plaintiff was not disabled as defined in the Act. T. 20-33. On June 3, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's determination the Commissioner's final decision. T. 1-6. This action followed.

## III. The ALJ's Decision

Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. T. 23. At step one of the five-step sequential evaluation, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 21, 2010, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff suffered from the severe impairments of mild degenerative cervical

---

[2]Plaintiff lived in California at the time her application was filed, and it was therefore subject to the reconsideration level of review, unlike applications filed in New York.

2

spodylosis and mild degenerative lumbar spondylosis. *Id.* The ALJ further found that Plaintiff's medically determinable impairments of rib pain/fractures, marijuana dependency, depression, and anxiety were non-severe. T. 23-25. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment. T. 25.

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform "the full range of medium work as defined in 20 CFR 404.1567(c)." T. 25. At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a nurse and a videotape editor. T. 33. Accordingly, the ALJ found Plaintiff not disabled as defined in the Act. *Id.*

**IV. Discussion**

    **A. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation omitted). Although the reviewing court must scrutinize the whole

3

record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

**B.  Right to a Full and Fair Hearing**

"Before determining whether the Commissioner's conclusions are supported by substantial evidence . . . [the Court] must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation omitted and second alteration in original). "In the absence of . . . a full and fair hearing, the Court cannot determine whether the ALJ's conclusions are supported by substantial evidence and thus must remand for further development." *Estrada v. Comm'r of Soc. Sec.*, No. 13-CV-04278 CM SN, 2014 WL 3819080, at *4 (S.D.N.Y. June 25, 2014).

In this case, the bulk of Plaintiff's arguments relate not to the content of the ALJ's decision, but to the process by which it was produced. In particular, Plaintiff maintains that she was denied her right to a full and fair hearing because: (1) she did not timely receive the ALJ's proffer of evidence (namely, the post-

hearing interrogatory completed by non-treating medical expert Dr. Arthur Lorber); (2) she did not make a fully informed, knowing waiver of her right to representation; and (3) the ALJ was unduly hostile and antagonistic to her, calling into question his impartiality. For the reasons discussed below, the Court agrees with Plaintiff that she was not provided with a full and fair hearing, and that, accordingly, remand for further proceedings is required.

### 1. Untimely Receipt of Evidence

It is well-established that "[t]he interest of an individual in continued receipt of [Social Security disability benefits] is a statutorily created 'property' interest protected by the Fifth Amendment," and that as such, a social security disability claimant is entitled to due process in connection with his or her hearing. *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) (alteration in original); *see also Yancey v. Apfel*, 145 F.3d 106, 112 (2d Cir. 1998) ("Generally, due process requires that a social security disability hearing must be full and fair."). Accordingly, "a disability benefits claimant has a right to cross examine the author of an adverse report and to present rebuttal evidence." *Id*.

In this case, Plaintiff contends that she was deprived of her right to due process because she was not properly afforded the opportunity to respond to the post-hearing interrogatory submitted by Dr. Lorber. The Court agrees.

5

Dr. Lorber, an orthopedic surgeon, testified before the ALJ at the hearing held on January 8, 2013. T. 70-76. Dr. Lorber opined that: (1) Plaintiff's impairments did not meet or equal Listing 1.04A or Listing 1.04C; (2) Plaintiff was capable of performing light work; and (3) specifically, Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for a total of four hours per day, one hour at a time, and sit for six hours per day, one hour at a time. T. 75-76.

After the hearing, the ALJ submitted a medical interrogatory to Dr. Lorber. On June 8, 2013, Dr. Lorber submitted a response to the ALJ in which he significantly changed his opinion regarding Plaintiff's RFC. T. 1104-1108. In particular, Dr. Lorber opined in his response to the ALJ's interrogatory that Plaintiff was capable of performing medium work, with the following additional limitations: can occasionally lift up to 50 pounds and frequently lift up to 20 pounds; may "at least occasionally" crouch, stoop, kneel, and crawl; may occasionally work at unprotected heights or around dangerous moving machinery; may occasionally climb ladders and scaffolds; may frequently operate foot pedals with either foot; should avoid exposure to concentrated vibration; may stand or walk for a total of six hours per day, one hour at a time; may sit for a total of eight hours per day, one hour at a time; and should avoid constant overhead work with either arm, but can perform overhead work on a frequent basis. T. 1107-1108.

The record indicates that the ALJ sent a copy of Dr. Lorber's interrogatory response to Plaintiff on June 14, 2013. T. 318.

6

However, the copy was sent to an incorrect address - it was addressed to "Argerne, NY," as opposed to Plaintiff's correct address of Arverne, New York. T. 318, 527. In October 2015, Plaintiff sent a letter to the Social Security Administration indicating that she had not timely received information incorrectly sent to her in "Argerne." T. 527. As such, the record does not permit the Court to conclude that Plaintiff timely received Dr. Lorber's interrogatory response such that she was afforded a meaningful opportunity to respond to it. This was a violation of her right to due process. *See, e.g., Gallo v. Colvin*, No. 15CV9302ATBCM, 2016 WL 7744444, at *12 (S.D.N.Y. Dec. 23, 2016) ("[T]he Second Circuit has long held that the Commissioner cannot base a disability decision upon a report obtained after the hearing unless the claimant has been permitted to confront the new evidence.") (internal quotation omitted); *Knox v. Astrue*, No. 10-CV-38 SLT, 2012 WL 1117849, at *19 (E.D.N.Y. Mar. 30, 2012) (finding due process concerns where letter to claimant's counsel regarding opportunity to submit questions about post-hearing information was sent to the wrong address).

The Court is unpersuaded by Defendant's argument that Plaintiff was not prejudiced by her lack of opportunity to rebut Dr. Lorber's interrogatory response. Dr. Lorber significantly changed his opinion regarding Plaintiff's RFC between his hearing testimony and his interrogatory response. In determining that Plaintiff was not disabled, the ALJ relied upon Dr. Lorber's interrogatory response in concluding that Plaintiff was capable of

7

performing medium work. T. 31. This Court cannot conclude, on the current record, that Plaintiff would have been unable to proffer additional information or medical records that would have impacted the ALJ's crediting of Dr. Lorber's final opinion.

## 2. Unknowing Waiver of Right to Representation

Plaintiff also contends that she did not knowingly waive her right to be represented by counsel in connection with her hearing before the ALJ. Again, the Court agrees.

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel. If properly informed of this right, a claimant may waive it." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal citations omitted). "The Commissioner must advise the claimant of this right, in writing, before the hearing. Further, at the hearing, the ALJ must ensure that the claimant is aware of the right to counsel." *Paul v. Comm'r of Soc. Sec.*, No. 15-CV-5971 (JLC), 2016 WL 1743083, at *5 (S.D.N.Y. Apr. 28, 2016) (internal citations omitted). "The Commissioner of Social Security is not obligated to provide a claimant with counsel, but where a claimant proceeds *pro se*, the ALJ has a duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lamay*, 562 F.3d at 509 (internal quotation omitted). "Where the ALJ downplay[s] the benefits of counsel or neglects to indicate clearly that the claimant has a right to representation, the claimant's waiver is

8

not adequately knowing." *Martino ex rel. C.P. v. Astrue*, No. 09 CIV. 6479 KBF, 2012 WL 1506058, at *9 (S.D.N.Y. Apr. 27, 2012) (internal citations and quotations omitted and alteration in the original).

In this case, at Plaintiff's initial hearing on August 15, 2012, the following exchange occurred:

> **ALJ**: You were sent correspondence in the mail that told you what your rights were. Did you read those?
> **Plaintiff**: Not in full, no.
> **ALJ**: Well, you understand you had a right to —
> **Plaintiff**: Yes.
> **ALJ**: – a representative?
> **Plaintiff**: Yes, I understood I have a right to a representative.
> **ALJ**: You have any questions concerning those rights?
> **Plaintiff**: No, I did attempt to get representation. I don't know if that matters.
> **ALJ**: Well, you didn't get one?
> **Plaintiff**: No sir.
> **ALJ**: All right, so are you going to waive those rights and proceed today?
> **Plaintiff**: Yes, sir.

T. 41. At the supplemental hearing on January 8, 2013, the ALJ did not discuss the right to representation with Plaintiff at all.

Plaintiff argues, and the Court agrees, that the ALJ failed to properly ensure that Plaintiff understood her right to representation. Plaintiff's disclosure to the ALJ that she had not fully read the notices sent to her prior to the hearing put him on notice that she was unlikely to be aware of her right to representation or of the potential benefits associated therewith. Moreover, the fact that Plaintiff interrupted the ALJ to respond in the affirmative to his question before it was even completed is further evidence that she did not comprehend the seriousness of the

9

matter being discussed. When the ALJ asked her if she had any questions, she indicated that she was confused about the impact and contours of her right, and expressly stated that she "didn't know if [it] mattered" that she had unsuccessfully attempted to obtain representation. Instead of attempting to clear up Plaintiff's obvious confusion, the ALJ instead simply confirmed that Plaintiff had not been able to find representation and then asked her whether she waived her right to counsel. This exchange between plaintiff and the ALJ fell far short of advising plaintiff of her rights to seek a representative. Notably, the ALJ did not ask Plaintiff whether she wanted additional time to secure representation, despite Plaintiff's clear indication that she did want representation, but had not yet been successful in securing it. Under these circumstances, the Court concludes that Plaintiff's waiver of her right to representation "was not adequately knowing, willing, and voluntary as required by Second Circuit law." *Paul*, 2016 WL 1743083, at *6.

The ALJ's failure to ensure that Plaintiff's waiver of her right to counsel was knowing "does not supply an independent basis to remand; however, [w]hen such an error augments a separate legal error committed by the ALJ and prejudices the claimant, the lack of a valid waiver of representation can supply a reason to remand the proceeding." *Soto v. Comm'r of Soc. Sec.*, No. 14-CV-4723 GBD JLC, 2015 WL 3549626, at *5 (S.D.N.Y. June 8, 2015). In this case, the unknowing nature of Plaintiff's waiver of her right to representation was just one of several errors, which, considered in

10

combination, compel the conclusion that remand is necessary. Given Plaintiff's well-documented difficulty in representing herself, the Court further concludes that the error was prejudicial. As discussed below, there is evidence in the record that Plaintiff's *pro se* status, combined with hostility by the ALJ, resulted in relevant medical evidence not being considered.

### 3. Undue Hostility by the ALJ

Plaintiff's final argument in favor of her contention that she did not receive a full and fair hearing is that the ALJ evidenced undue hostility and antagonism towards her. The Court concurs that the ALJ's conduct was inappropriately hostile.

From the outset of the hearing on August 15, 2012, the ALJ made no effort whatsoever to hide his anger and irritation with Plaintiff. Indeed, at the second hearing on January 8, 2013, the ALJ stated that he had "yelled at" Plaintiff "continuous[ly]" at the prior hearing. T. 69. The ALJ chastised Plaintiff for her lack of understanding of how to submit records, to the point that she became quite upset. T. 56. The ALJ also flatly refused to look at evidence that Plaintiff claimed would show she did in fact submit the records he was claiming she had not submitted, and discounted her statement that she had not received a disc containing medical evidence. T. 55, 59. After berating Plaintiff, the ALJ then called in her husband, telling him that "[w]e got some problems here," that Plaintiff was "not understanding or reading" and that she "obviously needs some help." T. 58. It was highly

11

inappropriate for the ALJ to refuse to listen to Plaintiff, and instead call in her husband and denigrate Plaintiff to him.

Most troubling to the Court is the fact that the ALJ's hostility towards Plaintiff manifested in an unwillingness to consider medical evidence she attempted to present or indicated she wanted to present. For example, the following exchange occurred between the ALJ and Plaintiff at her initial hearing:

> **Plaintiff**: I went to an alternative medicine doctor.
> **ALJ**: Well, she won't be a qualified doctor for us to consider even.
> **Plaintiff**: Okay.
> **ALJ**: We only accept medical doctors.
> **Plaintiff**: Okay, I won't include that then.
> **ALJ**: You can send it in, but it does not carry any weight of being a treating source. She gets no credit for doing any practice on you.
> **Plaintiff**: I'll completely take it out.
> **ALJ**: That's up to you.

T. 44. The ALJ made no effort whatsoever to ascertain what Plaintiff meant by "alternative medicine doctor" before summarily informing Plaintiff that such treatment would not be considered and would carry no weight. There are many qualified, board-certified physicians who practice techniques that could be described as "alternative medicine" and it was highly inappropriate for the ALJ to discourage Plaintiff, who was proceeding *pro se*, from submitting records from her treatment providers without even attempting to confirm their nature.

Similarly, the ALJ summarily informed Plaintiff that naturopathic treatment she had received was "not relevant at all." T. 46. This was incorrect - while naturopathic doctors are not

12

considered "acceptable medical sources" under the Commissioner's regulations, an ALJ is still required to review their opinions. *See, e.g., Castro v. Berryhill*, No. 3:16-CV-00726-AC, 2017 WL 2936797, at *11 (D. Or. July 10, 2017) (it was error for ALJ to discredit naturopath's opinion solely on basis that he was not an acceptable medical source); *Thomas v. Astrue*, No. 4:12-CV-00004-SLG, 2013 WL 101531, at *9 (D. Alaska Jan. 8, 2013) ("While the diagnosis of a naturopathic doctor will not establish the existence of impairment, an ALJ should consider the evidence provided by naturopathic doctors when evaluating the severity of a claimant's impairment."). Again, the ALJ's frustration with and hostility towards Plaintiff led him to discourage her from providing information without proper consideration.

Having already determined that remand is necessary for the reasons discussed above, the Court need not determine whether the ALJ's hostility to Plaintiff was, standing alone, sufficient to deprive her of the right to a full and fair hearing. However, the Court does find that, on remand, assignment to a different ALJ is appropriate.

"Federal courts have the authority to remand for rehearing before a different ALJ. . . . Among the relevant considerations are an ALJ's unwillingness to apply the appropriate legal standard and a clearly manifested bias or hostility toward any party or position." *Patel v. Colvin*, No. 10-CV-04617 ENV, 2013 WL 3873234,

13

at *10 (E.D.N.Y. July 25, 2013) (internal citations omitted); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) ("when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate"). In this case, for the reasons discussed above, the Court finds that review by a new ALJ on remand is appropriate.

### C. Consideration of Treating Social Worker's Opinion

In addition to the procedural arguments addressed above, Plaintiff has also argued that the ALJ failed to properly evaluate the opinion of treating licensed medical social worker ("LMSW") Sara Viola. Having determined that remand for a new hearing is required, the Court need not reach this issue. On remand, the ALJ considering Plaintiff's application is instructed to assess LMSW Viola's opinion in accord with the applicable regulations.

### V. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Docket No. 10) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings (Docket No. 18) is denied. On remand, the Commissioner shall assign the matter to a new ALJ. In light of the fact that Plaintiff initially filed her application in 2010 (more than seven years ago), on remand, the Commissioner is instructed to consider Plaintiff's claims on an

14

expedited basis, to be completed no later than August 31, 2018. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 1, 2018
         Rochester, New York.